IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Lisa M. Baker,                    :
              Plaintiff           :     Civil Action 2:12-cv-00264

        v.                        :     Judge Watson

Carolyn W. Colvin, Acting         :     Magistrate Judge Abel
Commissioner of Social Security,
              Defendant           :

**REPORT AND RECOMMENDATION**

Plaintiff Lisa M. Baker brings this action under 42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits.  This matter is before the  Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>**  Plaintiff alleges disability beginning  April 1, 1994 due to epilepsy and damage to the spine. The administrative law judge concluded that plaintiff retained the residual functional capacity to perform a reduced range of light work and that she was able to perform her past relevant work as a fast food worker.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to consider whether Baker met or equaled Listing 12.05C; and,
- The administrative law judge failed to properly evaluate plaintiff's credibility.

**<u>Procedural History.</u>**  Plaintiff Lisa M. Baker filed her application for disability insurance benefits on July 22, 2009, alleging that she became disabled on April 1, 1994,

at age 17, by a severe learning disability, scoliosis, severe back problems and a reading disability. (R. 117, 146.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On March 22, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 23.) A vocational expert also testified. On April 6, 2011, the administrative law judge issued a decision finding that Baker was not disabled within the meaning of the Act. (R. 18.) On February 6, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.** Lisa M. Baker was born January 18, 1977. (R. 117.) She completed the eighth grade. She was in special education classes. (R. 224.) She has worked as a bagger at a grocery store, a fast food cook, and a runner at a thrift store. She last worked August 1, 2006. (R. 147.)

**Plaintiff's Testimony.** Baker testified that she was 34. She lived with her 14 year old daughter in an apartment. Baker drove two to three times a week. She drove to the store and occasionally took her daughter to school. Baker testified that she finished the eighth grade, but she cannot read or write. Her mother had been told that she was at a third grade reading level. The welfare department sent her to remedial classes, but they did not help.

Baker last worked five years ago. Her last job was at Tim Horton's as a baker. She left that job after about six months when she was asked to work the cash register. This

2

was the longest job she had ever held. She testified that she had not participated in vocational rehabilitation. Her inability to read and write and her back problems prevented her from working.

Her back caused her a lot of pain. She can only stand and sit for 15 to 20 minutes. At times, she could sit or stand for half an hour. She had not received treatment since October because she was pregnant. She also testified that she did not like being around people because of anxiety. She has not been to physical therapy or a pain clinic for her back pain.

Plaintiff testified that her anxiety caused her stay home a lot. She has not had therapy for her anxiety. Because of her back pain, Baker is not supposed to lift anything over 15-20 pounds. Her ability to walk depends on how her back is feeling. On a good day, she could stand for about 20-30 minutes. She could sit for 20-30 minutes. Plaintiff is able to do the laundry if her daughter carries downstairs for her. Baker dresses herself and does her own grooming and bathing. She prepares meals sometimes and goes grocery shopping with the help of her daughter. It is difficult for plaintiff to vacuum and sweep. Plaintiff also reported difficulty sleeping.

(R. 27-43.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Between October 2002 and October 2010, Baker was seen sporadically by her family physician, Dr. Richard McCarty for a variety of complaints ranging from requests for medication refills, concerns about pregnancy,  and general bouts of illness.

A November 5, 2004 x-ray of plaintiff's spine showed a relatively severe dextro-scoliotic curvature of the thoracic spine. She also had a more moderate levoscoliotic curvature of from the superior end plate at T12 through the inferior end plate of L4. Plaintiff had only minimal degenerative changes. (R. 206.)

Robert C. Woskobnick, D.O. On September 3, 2009, Dr. Woskobnick performed a consultative examination of plaintiff at the request of the Bureau of Disability Determi-nation. Baker reported a history of scoliosis. For the past two to three years, she had experienced shoulder pain, greater on the right than the left. She last worked baking at Tim Hortons, but she stopped based on her back pain and illiteracy. She reported that she had a third grade reading ability and that she had difficulty following instructions and reading and writing on the job. She finished the eighth grade in special education.

On physical examination, plaintiff had a normal gait without any assistive devices. Baker had crepitus of the range of motion of the shoulders bilaterally, although her range of motion was intact. Plaintiff had decreased range of motion of the dorsal lumbar spine. She was able to do a deep knee bend to 50%. Dr. Woskobnick diagnosed a history of scoliosis of back with decreased range of motion; bilateral shoulder pain, right greater than left, depression and anxiety; and illiteracy. Dr. Woskobnick con-

4

cluded that plaintiff would have difficulty with prolonged standing, lifting and repetitive motion activities with the trunk. Her illiteracy would impair her ability to do any other work than manual labor. (R. 224-26.)

A September 3, 2009 x-ray of plaintiff's right shoulder was normal. (R. 227.)

<u>Walter Holbrook, M.D.</u> On November 9, 2009, Dr. Holbrook, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Holbrook opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She could stand and/or walk for about 6 hours in an 8-hour day. She could sit for about 6 hours in an 8 hour day. Plaintiff was limited in her upper and lower extremities with respect to pushing and/or pulling.

Dr. Holbrook noted that plaintiff's peripheral pulses were 2/4 bilaterally. There was evidence of crepitus in the range of the motion of her shoulders, although her range of motion was intact. Plaintiff had decreased range of motion in the dorsal lum-bar spine. She could do a deep knee bend 50%. She had DTS in both her upper and lower extremities. Straight leg raising was negative.

Plaintiff could occasionally stoop and crawl. Baker was limited in her ability to reach. Dr. Holbrook noted that plaintiff reported that she could lift 10-15 pounds. Plaintiff was independent in her personal care. She was able to perform household chores and had learned to live with her chronic pain and scoliosis. Her MDI's of scoliosis and shoulder pain were documented and could cause her symptoms. Dr. Holbrook concluded that plaintiff's described limitations were consistent with the

medical and non-medical evidence and that her statements regarding her symptoms were credible. (R. 257-64.)

Dimitri Teague, M.D. On March 16, 2910, Dr. Teague, a state agency reviewing physician, completed a physical residual functional capacity assessment. Dr. Teague opined that plaintiff could occasional lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Baker could stand and/or walk for about 6 hours in an 8 hour day. She could sit for about 6 hours in an 8 hour day. Dr. Teague opined that plaintiff could never climb ladders, ropes or scaffolds. She could occasionally stoop and crouch. Baker was limited in her ability to reach.

Dr. Teague concluded that plaintiff's statement were mostly consistent with the medical findings. Plaintiff reported that she could lift anything over a certain amount of wait and that she could not sit or stand for long periods of time. She reported constant pain and an inability to get comfortable when sleeping or sitting. (R. 277-84.)

**Psychological Impairments.**

Scott Lewis Donaldson, Ph.D. On September 8, 2009, Dr. Donaldson, a psychologist, performed a consultative examination for the Bureau of Disability Determination. Plaintiff reported that she was applying for Social Security because she had a severe learning disability, bipolar disorder and mood swings.

On mental status examination, Dr. Donaldson described plaintiff's mood as agitated with flat affect. Plaintiff reported symptoms of mania including increased talkativeness, increased goal-directed activity, and psychomotor agitation. She reported

6

tearfulness four to five times per week. Plaintiff reported feelings of guilt, hopelessness, helplessness and worthlessness. She reported a depressed most of the day, a diminished interest in activities, insomnia, psychomotor agitation, and a lack of concentration. Baker reported anxiety in social situations and excessive worrying. She was restless, edgy, easily fatigued, irritable, and had difficulty concentration. She experienced muscle tension, tremors, excessive perspiration, bruxism, and a sleep disturbance. She paced.

Plaintiff described her daily activities as cooking and doing laundry. She had two to three friends, but she did not have any hobbies. She shopped for groceries one to two times a week.

Dr. Donaldson administered the Wechsler Adult Intelligence Scale, 4th edition ("WAIS-IV"). Plaintiff achieved a verbal IQ score of 70, a performance IQ score of 82, a working memory IQ score of 63, a processing speed IQ score of 76, and a full IQ score of 69. Plaintiff fell within the intellectually impaired range. Dr. Donaldson noted that plaintiff seemed to understand the test instructions and did not appear distracted or respond to queries incorrectly. He further noted, however, that previously administered measures of cognition indicated that Baker functioned in the average range, so these results might not be valid.

Dr. Donaldson diagnosed major depressive disorder and generalized anxiety disorder. He deferred diagnosing plaintiff on Axis II. Dr. Donaldson opined that Baker's ability to understand, remember, and carry out one or two step job instructions did not

appear impaired. Her ability to perform repetitive tasks does not appear limit-ed. He noted that plaintiff's motivation might be moderately limited based on her depression and anxiety. She had moderate limitations in her abilities to respond to relevant stimuli and to relate to supervisors and co-workers. He ability to withstand the stress and pressures associated with day-to-day work was moderately limited. (R. 232-37.)

Aracelis Rivera, Psy.D. On October 6, 2009, Dr. Rivera, a state agency reviewing psychologist, completed a mental residual functional capacity assessment. Baker was moderately limited in her ability to remember locations and work-like procedures. She was moderately limited in her abilities to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or prox-imity to others without being distracted by them, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest per-iods. With respect to social interaction, plaintiff was moderately limited in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Baker had moderate lim-itations in her ability to set realistic goals or make plans independently.

Dr. Rivera noted that plaintiff had achieved a full scale IQ score of 93 in 1989. Plaintiff had maintained past employment in restaurant work. She quit these positions when she was asked to work at the cash register. She had capable of performing other

job duties adequately. With respect to her activities of daily living, plaintiff was independent in personal care and caring for her child. She performed household chores without reminders or encouragement. She handled her own finances. Plaintiff did not think that she could write a check. She cannot operate an ATM. She could operate a washer, dryer and microwave if they were not digital.  Dr. Rivera opined that plaintiff maintained the capacity to perform simple and mildly complex tasks of repetitive nature with superficial social interactions and no fast-paced or strict production requirements. Plaintiff's allegations were credible. (R. 239-42.)

Dr. Rivera also completed a psychiatric review technique. Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder. Plaintiff had mild restriction of activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 243-56.)

<u>Kristen Haskins, Psy.D.</u> On March 11, 2010, Dr. Haskins, a state agency reviewing psychologist, reviewed the evidence of record and concluded that Dr. Rivera's conclusions were consistent with the record. Dr. Haskins noted that plaintiff did not received any psychiatric treatment although she was prescribed Xanax and Soma for anxiety by her primary care physician. (R. 274.)

**<u>Administrative Law Judge's Findings.</u>**

1.    The claimant has not engaged in substantial gainful activity since July 15, 2009, the application date (20 CFR 416.971 *et seq*.).

2.      The claimant has the following severe impairments: scoliosis, shoulder strain, borderline intellectual function, major depressive disorder, and general anxiety disorder (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as a defined in 20 CFR 416.967 such that the claimant can lift and carry 20 pounds occasionally, and 10 pounds frequently, sit for a total of 6 hours in an 8-hour workday, with normal breaks, stand and walk for a total of 6 hours in an 8-hour workday, with normal breaks and push and pull within these limitations. She is limited to frequent overhead reaching, and can never climb ladders, ropes, or scaffolds. The claimant can only stoop and crouch on an occasional basis, and is limited to simple, routine, and repetitive tasks, with superficial social interaction and no fast pace or strict production pace.

5.      The claimant is capable of performing past relevant work as a fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security Act, since July 15, 2009, the date the application was filed (20 CFR 416.920(f&g)).

(R. 11-18.)

        **Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id.*  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976).  The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

  **Plaintiff's Arguments.**   Plaintiff argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge failed to consider whether Baker met or equaled
  Listing 12.05C. Plaintiff argues that there is substantial evidence demon-
  strating that she met Listing 12.05C. Although Dr. Donaldson noted that
  previously administered measures indicated that plaintiff was in the average
  range, he did not provide any information regarding the previous scores. He
  indicated that Baker seemed to understand the test instructions and appeared
  to respond to queries correctly. Baker has additional severe impairments, and
  Listing 12.05C is met where a claimant had an IQ in the prescribed range and
  was limited to no more than light activity work. Plaintiff maintains that she

satisfies the requirement of subaverage general functioning with adaptive
deficits manifested prior to age 22. Plaintiff was in special education classes
and dropped out of school following the eighth grade. Her ability to read and
write is limited. She can read her name and basic street names, but not a
newspaper headline. As an adult, she was in remedial education classes, but
she did not improve. She has been forced to give up jobs when asked to
perform tasks that were too complex for her. Plaintiff further argues that the
administrative law judge erred by adopting the opinions of state agency
psychologists who relied upon an erroneous legal standard. The previous IQ
score referenced by Dr. Donaldson does not appear in the record and key
pieces of information are missing. There is no information regarding which
test was administered, who administered it, or what credentials were held by
that individual. Furthermore, where more than one score is derived, the
lowest score is used to determine whether the Listing is met. Even if the
purported score from 1989 is valid, that score ceased to be valid in October
1991 because scores obtained prior to age 16 are viewed as a current for 2
years when the IQ is 40 or above.

- The administrative law judge failed to properly evaluate plaintiff's credibility.
  Plaintiff argues that the administrative law judge is not permitted to make
  credibility determinations based solely upon an intangible or intuitive notion
  about an individuals credibility. The reviewing physicians who examined the

12

evidence of record and compared Baker's statements concerning her limitations against the objective record and found that plaintiff's allegations were credible. Plaintiff maintains that the administrative law judge impermissible played doctor by reaching this conclusion and overriding the evaluations of the experts. Plaintiff further argues that the administrative law judge erred when he questioned the sporadic nature of Baker's work history prior to her alleged onset date. Plaintiff maintains that she attempted to work and repeatedly ended up in jobs that were too challenging for her. As a result, she was forced to leave those jobs because she lacked the mental capacity to perform the jobs. The administrative law judge also improperly criticized plaintiff for her attempts to work after her onset date. Plaintiff's attempts never constituted substantial gainful activity. The regulations allow individuals to continue to try to work without penalizing them if they are unsuccessful.

**Analysis.**

<u>Listing 12.05C</u>. Listing 12.05C provides in pertinent part:

12.05 Mental retardation: Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive function-ing initially manifested during the developmental period; i.e., the evid-ence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the require-ments in A, B, C, or D are satisfied.
. . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and signifi-cant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1. To meet the listing for mental retardation, an impairment must satisfy both the diagnostic description in the introductory paragraph of § 12.05 and one of the four sets of criteria found in subparagraphs A through D. *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001). Valid IQ test scores are essential to meet the Listing:

> The results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

20 CFR Pt. 404, Subpt. P, App. 1

Here, the administrative failed to consider whether plaintiff met or equaled Listing 12.05C.  Additionally, given plaintiff's age at the time of the 1989 test and the lack of a corresponding narrative report, it was not proper for the administrative law judge to rely on the opinions of the consulting psychologists who did not have access to these records. As a result, it RECOMMENDED that this case be REMANDED for the administrative law judge to consider whether plaintiff meets or equals Listing 12.05C.

Credibility Determination. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any*

*medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A) (emphasis added).

Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's symptoms consistent with the commands of the statute:

> (a) *General*. In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c). By other evidence, we mean the kinds of

15

evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)
(1), (4), and (5) and (e).  These include statements or reports from
you, your treating or examining physician or psychologist, and
others about your medical history, diagnosis, prescribed treatment,
daily activities, efforts to work and any other evidence showing how
your impairment(s) and any related symptoms affect your ability to
work.  We will consider all of your statements about your symptoms,
such as pain, and any description you, your physician, your psych-
ologist, or other persons may provide about how the symptoms
affect your activities of daily living and your ability to work.  How-
ever, statements about your pain or other symptoms will not alone
establish that you are disabled; there must be medical signs and
laboratory findings which show that you have a medical impair-
ment(s) which could reasonably be expected to produce the pain or
other symptoms alleged and which, when considered with all of the
other evidence (including statements about the intensity and pe-
rsistence of your pain or other symptoms which may reasonably be
accepted as consistent with the medical signs and laboratory find-
ings), would lead to a conclusion that you are disabled.  In evaluat-
ing the intensity and persistence of your symptoms, including pain,
we will consider all of the available evidence, including your medical
history, the medical signs and laboratory findings and statements
about how your symptoms affect you.  (Section 404.1527 explains
how we consider opinions of your treating source and other medical
opinions on the existence and severity of your symptoms, such as
pain.)  We will then determine the extent to which your alleged
functional limitations and restrictions due to pain or other symptoms
can reasonably be accepted as consistent with the medical signs and
laboratory findings and other evidence to decide how your
symptoms affect your ability to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then eval-

uates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

> all of the available evidence, including your history, the signs and lab-
> oratory findings, and statements from you, your treating or nontreating
> source, or other persons about how your symptoms affect you. We also
> consider the medical opinions of your treating source and other medical
> opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both

objective medical evidence and "any other information you may submit about your

symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify,
> any symptom-related functional limitations and restrictions which you,
> your treating or nontreating source, or other persons report, which can
> reasonably be accepted as consistent with the objective medical evidence
> and other evidence, will be taken into account as explained in paragraph
> (c)(4) of this section in reaching a conclusion as to whether you are dis-
> abled. We will consider all of the evidence presented, including informa-
> tion about your prior work record, your statements about your symptoms,
> evidence submitted by your treating or nontreating source, and observa-
> tions by our employees and other persons. Section 404.1527 explains in
> detail how we consider and weigh treating source and other medical
> opinions about the nature and severity of your impairment(s) and any
> related symptoms, such as pain. Factors relevant to your symptoms, such
> as pain, which we will consider include:

>> (I) Your daily activities;

>> (ii) The location, duration, frequency, and intensity of your pain or
>> other symptoms;

>> (iii) Precipitating and aggravating factors;

17

      (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

      (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

      (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

      (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's symptoms limit his ability to work, the Commissioner considers whether the claimant's statements about the symptoms is supported by or inconsistent with other evidence of record:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations for evaluating a claimant's symptoms and their effects:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.
>
> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> > 1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Case law interpreting the statute and regulations. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed.Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human*

20

*Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition."  If so, the Court must then

> examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.  Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ."  *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *See id*. (quoting SSR 96-7p).  Furthermore, the ALJ's decision must be supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

Discussion of ALJ's credibility determination. The administrative law judge stated:

> In terms of the claimant's alleged physical impairments, the undersigned finds that the record contains evidence that undermines her allegations. Many of the claimant's physical examinations yielded unremarkable findings. During a September 2009 consultative physical examination, the claimant demonstrated a normal gait without any assistive devices.

21

(Exhibit 2F). Her shoulders also exhibited a full range of motion, despite some bilateral crepitus. (Id.). Further, the claimant demonstrated normal muscle strength in her upper and lower extremities, no muscle spasms or atrophy, and full range of motion in the cervical spine – despite some limited range of motion in the dorsolumbar spine. (Id.).

An x-ray of the claimant's right shoulder revealed that it was normal. (Id.). She also had a normal toe, heel, and tandem walk, her cranial nerves II-XII were intact, and her straight leg raise was negative in both the supine and seated positions. (I.d). The claimant was also able to perform a deep knee bend 50%. (Id.).

In addition, the record indicates that the claimant has sought little treatment for her allegedly disabling symptoms. Moreover, the undersigned finds that her sporadic work record prior to the alleged disability onset date, which raises the question as to whether he claimant's continuing unemployment is actually due to medical impairments or a matter of lifestyle. (Exhibits 2D, 3D, 4D, and 5D). Her work record certainly does not enhance her allegations. Further, as discussed above, the record reflects some work activity after the alleged onset date. (Id. and Hearing Testimony). Although the work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, contradicted her allegations of disability.

(R. 14-15.)

Because the administrative law judge failed to consider whether plaintiff met or equaled Listing 12.05C, he failed to consider whether plaintiff allegations of a cognitive impairment precluded substantial gainful activity were credible. On remand, the administrative law judge should consider plaintiff's allegations concerning her cognitive impairment when making his credibility determination.

For the reasons stated above, the Magistrate Judge RECOMMENDS that this case be REMANDED for consideration of whether plaintiff meets or equals Listing 12.05C.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel
United States Magistrate Judge

23